FILED

June 24 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0461

DA 13-0461

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 177

STATE OF MONTANA,

        Plaintiff and Appellee,

   v.

KYLE RYAN McKEEVER,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Seventh Judicial District,
                       In and For the County of Dawson, Cause No. DC-12-102
                       Honorable Richard A. Simonton, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Wade Zolynski, Chief Appellate Defender, David G. Dennis, Koan
                Mercer, Assistant Appellate Defenders, John M. Wolff, Intern,
                Helena, Montana

        For Appellee:

                Timothy C. Fox, Montana Attorney General, Pamela P. Collins, Assistant
                Attorney General, Helena, Montana

                Olivia Norlin-Rieger, Dawson County Attorney, Glendive, Montana

                                       Submitted on Briefs:  April 15, 2015
                                          Decided:  June 24, 2015

Filed:

                                           Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Kyle McKeever appeals from the District Court's order of March 5, 2013, denying his motion to suppress evidence. We affirm.

¶2 The issue on appeal is whether the District Court properly denied McKeever's motion to suppress the contents of the prescription bottle found during the arrest.

## BACKGROUND

¶3 In December 2012 a Glendive Police Department officer stopped McKeever's car after recognizing him as a person who had a suspended driver's license. The officer noted that McKeever was nervous, trembling and swallowing frequently. McKeever stated that he could not go to jail, and that he was on his way to the public library to get driving directions to Great Falls. After confirming that McKeever's license was suspended, the officer placed McKeever under arrest. McKeever consented to a search of his vehicle, and the officer called for backup and a second officer arrived. The officer conducted a pat-down search and discovered a prescription medication bottle in the cuff of McKeever's pants leg. The prescription was for a controlled substance called Alprazolam and the label indicated that it had been issued to a person named Motschenbacher.

¶4 The officer asked McKeever what was in the bottle and McKeever did not respond. One or both of the officers opened the bottle and saw that it contained tissue paper over a few pills. McKeever told the officers he did not know where he got the bottle and did not know why it was in his pants cuff. At some point during this process

one of the officers handcuffed McKeever and told him he would be taken to the Dawson County Detention Center.

¶5 At the Detention Center McKeever was cited for driving with a suspended or revoked license. The officer subsequently confirmed that the pills in the bottle were a controlled substance and cited McKeever for criminal possession of dangerous drugs.

¶6 In 2013 the State charged McKeever with felony criminal possession of dangerous drugs, § 45-9-102, MCA. McKeever entered a plea agreement with the State after the District Court denied his motion to suppress the drugs seized at the time of arrest. McKeever pled guilty to the drug possession offense, reserving the right to appeal the District Court's pre-trial suppression order. On May 24, 2013, the District Court sentenced McKeever to a three-year deferred imposition of sentence, as specified in the plea agreement.

¶7 McKeever filed a timely notice of appeal, but his opening brief was not filed until July 18, 2014. The State's response brief was filed October 15, 2014, and McKeever's reply brief was filed February 27, 2015.

## STANDARDS OF REVIEW

¶8 This Court reviews a district court's decision on a motion to suppress evidence to determine whether the findings of fact are clearly erroneous, and whether the district court correctly applied the law. *State v. Hilgendorf*, 2009 MT 158, ¶ 11, 350 Mont. 412, 208 P.3d 401. We will affirm a district court when it reaches the correct result, even if it is for the wrong reason. *In re BAM*, 2008 MT 311, ¶ 24, 346 Mont. 49, 192 P.3d 1161.

3

**DISCUSSION**

¶9 *Issue: Whether the District Court properly denied McKeever's motion to suppress the contents of the prescription bottle found during the arrest.*

¶10 The District Court's order denying the motion to suppress determined that McKeever did not contend that the vehicle stop was unlawful and did not contend that the officers improperly conducted a pat-down search. While McKeever accepted that discovery of the pill bottle was lawful, he objected to the officers' opening it without a search warrant. The District Court found that the search was incident to the arrest pursuant to § 46-5-102, MCA. The pill bottle "appeared to be contraband" because the prescription was in the name of another person and was for a controlled substance. Because McKeever did not provide a reasonable explanation for his possession of the bottle, the District Court determined that the officers "would have been remiss in their duty" to not check the contents of the bottle. While the bottle contained a controlled substance, if it had been empty or had contained something other than a controlled substance, there would have been no crime.

¶11 The District Court determined that because the officers "obviously had probable cause" to obtain a search warrant for the pill bottle, they would have inevitably discovered its contents. Alternatively, because McKeever was in custody, the District Court determined that a "standard inventory search" at the Detention Center would have discovered the contents of the pill bottle, citing *Hilgendorf*, ¶ 26. The District Court determined that the officers therefore would have inevitably discovered the pills and denied the motion to suppress.

4

¶12 On appeal McKeever contends that opening the pill bottle was an illegal search because he was under arrest and handcuffed, and opening the bottle did not serve to protect the officers, did not prevent him from escaping, did not relate to the driving offense, and was not justified by exigent circumstances. McKeever disagrees with application of the concept of inevitable discovery because it would "eviscerate" constitutional protections against unreasonable searches. He also contends that concluding the pills would have been discovered upon booking at the detention center is speculation, and that the State presented no evidence as to the "standard protocol for inventory searches."

¶13 On appeal the State contends that there was no "search" of the contents of the prescription bottle because McKeever by his words and actions disclaimed any personal privacy interest in the prescription bottle. A search is not illegal if the defendant has disclaimed an interest in the object seized, § 46-5-103, MCA. He therefore lacked a reasonable expectation of privacy in the prescription bottle, and without a violation of privacy there can be no unreasonable search and the search was not illegal. The prescription was issued to another person who was not present; it was for a controlled substance, § 50-32-229(2)(a), MCA; and the bottle was therefore contraband that could be used in a prosecution, § 46-5-103(2), MCA.

¶14 The Fourth Amendment to the United States Constitution protects persons from unreasonable searches and seizures, and Article II, Sections 10 and 11 of the Montana Constitution provide similar but heightened protections. *State v. A Blue 1993 Chevrolet Pickup*, 2005 MT 180, ¶ 9, 328 Mont. 10, 116 P.3d 800. These provisions generally

require that a search be conducted pursuant to a warrant based upon probable cause. *State v. Dickinson*, 2008 MT 159, ¶ 18, 343 Mont. 301, 184 P.3d 305. Under the Montana Constitution a "search" occurs if governmental action breaches a person's reasonable expectation of privacy. *State v. Goetz*, 2008 MT 296, ¶ 25, 345 Mont. 421, 191 P.3d 489. Whether a "search" occurred in a particular case requires determining that the person challenging the state's action had an actual expectation of privacy that society is willing to recognize as reasonable. *Goetz,* ¶ 27.

¶15 The theory of inevitable discovery relied upon by the District Court is an exception to the requirement for a search warrant and can allow the use of evidence that might otherwise be excluded. *Dickinson*, ¶ 18. The inevitable discovery rule posits that evidence obtained without a search warrant may nonetheless be used against the defendant if law enforcement officers would clearly have been entitled to a warrant or would have inevitably discovered the evidence in a manner that did not require a warrant. *State v. Ellis*, 2009 MT 192, ¶¶ 48-49, 351 Mont. 95, 210 P.3d 144. Implied within the application of the rule is a conclusion that a search warrant was required, and that the evidence was seized in violation of the warrant requirement. We do not resolve this case through application of the inevitable discovery rule, but conclude that there was no search in the constitutional sense because the evidence does not demonstrate that McKeever had a reasonable privacy interest in the contents of the prescription bottle.

¶16 The initial search in this case discovered the prescription bottle in the cuff of McKeever's trousers. That search was lawful as a search incident to arrest and McKeever does not contend otherwise. Section 46-5-102, MCA; *Dickinson*, ¶ 18; *State*

6

*v. Lanegan*, 2004 MT 134, ¶ 13, 321 Mont. 349, 91 P.3d 578.  McKeever contends that there was a second search when one or both of the officers opened the bottle to determine its contents.  However, if McKeever had no reasonable expectation of privacy, there was no constitutional "search."  *State v. Hill*, 2004 MT 184, ¶ 24, 322 Mont. 165, 94 P.3d 752.  Our inquiry is whether under the facts of this case, the Court can conclude McKeever had an actual expectation of privacy and, if so, whether that is an expectation that society is willing to recognize as objectively reasonable.  *Hill*, ¶ 24.

¶17    When the person claiming an unconstitutional search does not articulate any reason other than his mere presence to support an expectation of privacy, the argument "is not compelling," and has the effect of a voluntary relinquishment of interest in the object.  *Hill*, ¶¶ 26, 28.  A voluntary relinquishment of interest in an item is akin to abandonment for assessing whether the person has a protectable expectation of privacy.  *1993 Chevrolet*, ¶ 14.  The overriding inquiry in this context is intent, which may be inferred from both statements and acts of the person.  *1993 Chevrolet*, ¶ 15.

¶18    In this case the totality of the circumstances demonstrates that McKeever had no reasonable expectation of privacy in the pill bottle.  When the prescription bottle was found during the initial search, McKeever did not remain silent but expressly disclaimed knowledge of where the bottle came from or how it got into his cuff.  He claimed no ownership of the bottle or its contents.  The name on the prescription was not his, and the prescription was for a controlled substance.  These circumstances completely undermine McKeever's argument that he had a reasonable expectation of personal privacy in the prescription bottle.  To the contrary, he virtually abandoned it once it was discovered.  In

7

*Hill* the defendant was stopped for a speeding violation, which led ultimately to the discovery of a large quantity of drugs in the trunk of the car he was driving. In response to the officer's questions, Hill stated that there was nothing in the trunk of the car, and, when duffle bags were found, said that they were not his. This Court held that Hill had "voluntarily relinquished any interest in the vehicle's trunk and its contents." *Hill*, ¶ 28. Therefore, any claimed expectation of privacy was "not objectively reasonable." McKeever did much the same here, relinquishing any interest in the pill bottle.

¶19 In the absence of an articulable and supportable right of privacy in the prescription bottle, there was no search in the constitutional sense.

¶20 The District Court therefore achieved the correct result by denying McKeever's motion to suppress.

¶21 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER

Justice Laurie McKinnon, specially concurring.

¶22 The Court resolves this case by finding that McKeever did not have an expectation of privacy in the contents of a pill bottle secreted within his clothing because he was silent when asked by police whether the pill bottle was his, and because the pill bottle had another person's name on it. The District Court found that the contents of the pill bottle

would have inevitably been discovered pursuant to the inventory search exception to the warrant requirement. I would affirm on this basis, relying on our decision in *State v. Hilgendorf*, 2009 MT 158, ¶ 27, 350 Mont. 412, 208 P.3d 401, reaffirmed in *State v. Demontiney*, 2014 MT 66, ¶ 17, 374 Mont. 211, 324 P.3d 344.

¶23 The Court's analysis is flawed for several reasons. First, the Court ignores that the pill bottle was actually found on McKeever's person, secreted in the cuff of his clothing. To determine if a search has occurred, the court considers (1) "whether the person challenging the state's action has an actual subjective expectation of privacy" and (2) "whether society is willing to recognize that subjective expectation as objectively reasonable . . . ." *State v. Goetz*, 2008 MT 296, ¶ 27, 345 Mont. 421, 191 P.3d 489. We stated in *State v. Elison*, 2000 MT 288, ¶ 49, 302 Mont. 228, 14 P.3d 456, that "[p]lacing an object beyond the purview of the public in a place from which the person has the right to exclude others evidences an actual or subjective expectation of privacy." By placing the pill bottle within the folds of his pants, and thus beyond the purview of the public, McKeever manifested an expectation of privacy in the pill bottle—just as one who places a wallet in a pocket manifests an expectation of privacy in both the pocket and the wallet. In considering the second factor, this Court has recognized that expectations of privacy in the contents of closed containers are objectively reasonable. *State v. Hamilton*, 2003 MT 71, ¶ 23, 314 Mont. 507, 67 P.3d 871 (recognizing objectively reasonable expectation of privacy in a lost wallet); *State v. Lanegan*, 2004 MT 134, ¶ 19, 321 Mont. 349, 91 P.3d 578 (affirming suppression of a search of a fanny pack); *State v. Graham*, 271 Mont. 510, 513, 898 P.2d 1206, 1208 (1995) (suppressing search of purse). Moreover, the Fourth

9

Amendment does not distinguish between containers worthy of protection. *United States v. Ross*, 456 U.S. 798, 822, 102 S. Ct. 2157, 2171 (1982).

¶24 We conclude that McKeever does not have a reasonable expectation of privacy in the contents of bottle because the name on the prescription was not his. Opinion, ¶ 18. However, we recognized in *State v. Bullock*, 272 Mont. 361, 372-73, 901 P.2d 61, 68-69 (1995), that a person may contest the legality of a search when the crime involves an allegation of a possessory interest in the property seized. In *Bullock*, we allowed a Fourth Amendment challenge where Bullock was charged with illegally possessing a game animal found on Bullock's co-defendant's property.

¶25 The Court's analysis is also flawed in finding that McKeever "expressly disclaimed knowledge of where the bottle came from or how it got into his cuff." Opinion, ¶ 18. The officer's testimony on this point is far from precise. At the suppression hearing, when asked how McKeever responded to questions about the pill bottle, the officer testified, "Basically, he indicated I don't know," "His reply was essentially I don't know," and "[H]e was evasive in his answers: I don't know or didn't answer." Testimony that McKeever "basically" or "essentially" "indicated"—likely nonverbally—that he would not or could not answer the officer's questions does not establish that he "expressly disclaimed knowledge" regarding the pill bottle. Preliminarily, the State has presented no authority that mere silence proves intent to abandon, nor has the Court based its conclusion that silence evidences abandonment upon any authority. *Cf. State v. 1993 Chevrolet Pickup*, 2005 MT 180, ¶ 15, 328 Mont. 10, 116 P.3d 800 (leaving trash for third party to pick up evidences abandonment). In

contrast, however, there is well-established authority that a defendant does not have to incriminate himself in order to preserve and assert a Fourth Amendment violation. *See Simmons v. United States*, 390 U.S. 377, 394, 88 S. Ct. 967, 976 (1968); *State v. Isom*, 196 Mont. 330, 339, 641 P.2d 417, 422 (1982). The Court's conclusion that a defendant must relinquish his right to remain silent in order to raise a Fourth Amendment challenge to an item removed from his clothing is at odds with well-established jurisprudence that a mere disclaimer of ownership in an effort to avoid making an incriminating statement in response to police questioning should not alone be deemed to constitute abandonment. *See* 2 Wayne R. LaFave et al., *Criminal Procedure* § 3.2(h), 93-94 (3d ed. 2007). Given the position that a defendant does not otherwise have to incriminate himself to preserve his Fourth Amendment rights, *Simmons*, 390 U.S. at 394, 88 S. Ct. at 976, it is difficult to understand how a refusal to make incriminating admissions in response to police interrogation can be held to deprive a person of Fourth Amendment standing.

¶26 In denying McKeever's motion to suppress, the District Court concluded that "since [McKeever] was under arrest at the station and placed in custody, a standard inventory search would have revealed the contents of the bottle." The District Court relied upon our decision in *Hilgendorf* to conclude that the contents of the pill bottle would have been inevitably discovered. As here, *Hilgendorf* involved a container hidden upon the defendant's person. *Hilgendorf*, ¶ 7. The container held powder, a razor blade, and marijuana, which were discovered pursuant to a search incident to arrest. *Hilgendorf*, ¶ 7. We held that "[i]t [was] undisputed that Hilgendorf was going to be arrested for possession of drug paraphernalia and taken to jail [and] would have been subjected to a

11

standard inventory search." *Hilgendorf*, ¶ 27. Pursuant to a search incident to arrest, police may take routine administrative steps to protect themselves, the arrestee, and others in the station house from potential dangers. *Hilgendorf*, ¶ 26. The legitimate and compelling interest of the State in protecting persons in and around the police station justifies the routine, administrative inventory search of property on the arrestee at the station following an arrestee's arrest. *Hilgendorf*, ¶ 26. Inventory searches are not subject to the probable cause strictures of § 46-5-401(2), MCA. *See Demontiney*, ¶ 17; *Hilgendorf*, ¶ 26; *State v. Heath*, 2000 MT 94, ¶ 18, 299 Mont. 230, 999 P.2d 324.

¶27 I would therefore hold, consistent with our case law, that McKeever had a reasonable expectation of privacy in the contents of the pill bottle removed from his clothing, but that the search was not unreasonable as a search incident to arrest.[1] Since McKeever was under arrest at the station and placed in custody, a standard inventory search would have revealed the contents of the bottle. I would affirm on this basis.

/S/ LAURIE McKINNON

---

[1] McKeever did not challenge his arrest or the search conducted incident to his arrest.